**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| AUDREY BRUNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 08 C 2200 |
| ) | |
| FOREST PRESERVE DISTRICT OF ) | Judge Rebecca R. Pallmeyer |
| COOK COUNTY, a public corporation, ) | |
| RICHARD W. WASZAK, in his ) | |
| individual capacity, and CYNTHIA ) | |
| SPINA-FOX, in her individual capacity, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Audrey Brunson was hired as an officer by the Police Department of Defendant Forest Preserve District of Cook County (the "District") in January 2005. After she began outdoor patrol, Plaintiff's asthma attacks became severe, causing her to miss work. In January 2006, Plaintiff filed a request for intermittent leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* Defendant Sergeant Cynthia Spina-Fox assured Plaintiff that Defendant Chief Richard Waszak had received the request, but Plaintiff never got a response and was terminated in April 2006 for excessive absenteeism. In this action against the District, Waszak, and Spina-Fox, Plaintiff alleges both interference with the exercise of her FMLA rights and retaliation for the attempt to exercise those rights. All parties have moved for summary judgment. For the reasons that follow, the court concludes that Plaintiff is entitled to judgment in her favor on her interference claim as against Defendants Waszak and the District. Her retaliation claim and all claims against Defendant Spina-Fox are dismissed.

## FACTUAL BACKGROUND

Before summarizing the facts, the court addresses Defendants' motion to strike portions of Plaintiff's Response to Defendants' Rule 56.1(a)(3) Statement of Undisputed Facts. Such motions

are disfavored unless they serve to expedite the work of the court. *RLJCS Enterprises, Inc. v. Professional Benefit Trust, Inc.*, 438 F. Supp. 2d 903, 906-07 (N.D. Ill. 2006). Defendants' motion does not meet that test. First, the majority of responses that Defendants attack for lacking citations are the type of responses—denying a legal conclusion, denying a subjective characterization, or denying a statement as unsupported by the record—that require no citation. Defendants also attack a set of responses for being argumentative and containing legal arguments. The court agrees that some of the legal arguments Plaintiff included were unnecessary: for example, when admitting that the stated reason for Plaintiff's termination was her excessive absenteeism, there was no need for Plaintiff to remind the court of her argument that the termination was, in truth, retaliatory. (Pl's 56.1(b)(3) Response to Defs' 56.1(a)(3) Statement, Dkt. 43, ¶ 61.) Nevertheless, these and other infractions are minor and isolated; striking the responses that Defendants complain of would serve no purpose. *See Holzer v. Prudential Equity Group LLC*, 520 F. Supp. 2d 922, 928 (N.D. Ill. 2007) (considering a motion to strike an answer to a complaint). Accordingly, the motion to strike is denied.

Plaintiff was hired by the District as a probationary employee on January 10, 2005, and entered the police academy. (Pl's 56.1(a)(3), Dkt. 36, Ex. 1, ¶¶ 8-9.) The probationary period lasts one year from the time a new officer completes training but will not exceed eighteen months from the officer's hiring date. (Defs' 56.1(a)(3), Dkt. 39, ¶ 7.) Plaintiff completed her training in April 2005 and was assigned to patrol duty. (Pl's 56.1(a)(3), Dkt. 36, Ex. 1, ¶ 10; Defs' 56.1(a)(3), Dkt. 39, ¶ 8). Plaintiff had been diagnosed with asthma in 2002, and in July 2005, her symptoms worsened, requiring at least one hospital visit as well as the use of some sick days. (Pl's 56.1(a)(3), Dkt. 36, Ex. 1, ¶¶ 6, 12-16; Defs' 56.1(a)(3), Dkt. 39, ¶¶ 9-11, 21.) The District's records show that Plaintiff used 12 sick days between July and December of 2005. (Defs' Ex. 15.) In her 56.1(a)(3) statement, Plaintiff states that during that period, she missed work "occasionally because of her asthma," but she does not cite evidence to quantify how many of those sick days were attributable

to her asthma and how many to other factors. (Pl's 56.1(a)(3), Dkt. 36, Ex. 1, ¶ 16, A-4, A-40, A-81-A-82.) Plaintiff believed that her asthma attacks worsened as a result of the fact that her work as a Forest Preserve Patrol Officer required her to be outdoors. (Defs' 56.1(a)(3), Dkt. 39, ¶¶ 18-19.) After another hospital visit in January 2006, Cathy Willis, an employee in the District's Employee Assistance Program, advised Plaintiff to file a request for FMLA leave, which Plaintiff did. (Pl's 56.1(a)(3), Dkt. 36, Ex. 1, ¶¶ 18-19.)

Plaintiff submitted her request for intermittent FMLA leave to Defendant Waszak on or about January 19, 2006. (Pl's 56.1(a)(3), Dkt. 36, Ex. 1, ¶ 19; Defs' Ex. 5.) The request included a certification by Plaintiff's doctor, which appears to be on a form created by the District. (Defs' Ex. 5.) The certification, a copy of which is in the record, states that Plaintiff suffers from asthma, will probably continue to suffer from it for her entire lifetime, and because of the asthma will need treatment for 1 to 3 days every 3 to 6 months. (*Id.*) To the question, "Is impatient [sic] hospitalization of the employee required?" Plaintiff's doctor checked "Yes." To the questions, "Is employee able to perform work of any kind?" and "Is employee able to perform the functions of employee' [sic] position?" the doctor checked "No." (*Id.*)

Plaintiff never received a response to her FMLA request and, in a letter dated April 18, 2006—one year after Plaintiff completed her training—the District informed Plaintiff that it was "exercising its option to terminate" her during the probationary period. (Pl's 56.1(a)(3), Dkt. 36, Ex. 1, ¶¶ 31, 35, at A-95.) The letter was signed by Defendant Waszak, who makes written recommendations on termination decisions, and by Superintendent Steven Bylina, who makes the ultimate decision. (Defs' 56.1(a)(3), Dkt. 39, ¶¶ 59-60.) Waszak testified and the District stated in an answer to an interrogatory that the reason for Plaintiff's termination was excessive absenteeism. (*Id.* ¶ 61, Ex. 16, Waszak's Dep., at 49; Pl's 56.1(a)(3), Dkt. 36, Ex. 1, at A-16.) Plaintiff does not dispute that she was often absent—the District's records show that she missed 36.5 days of work in the fifteen months she was employed by the District. (*Id.* ¶ 61, Exs. 11, 15.) Again, Plaintiff

offers no evidence on how many of those absences were attributable to her asthma.

It is undisputed that during the three-month period between Plaintiff's submission of her FMLA request and her termination, Waszak forwarded the request to three different lawyers for the District: to Robert Kinchen in January, to Lauren Gore in February, and to Susan Salita in April. (Pl's 56.1(a)(3), Dkt. 36, Ex. 1, ¶¶ 20, 24, 29, A-17.)  Twelve days before Plaintiff's termination, Salita provided Chief Waszak with a written legal opinion about Plaintiff.  (*Id.* ¶ 30; Defs' 56.1(b)(3)(C) Statement of Additional Facts, Dkt. 46, ¶ 3.)  A copy of that opinion is not in the record; according to Plaintiff, the opinion was withheld by Defendants on the grounds of attorney-client privilege.  (Pl's Memo in Opposition, Dkt. 42, at 4 n.2.)

An undated document produced by the District states that the proper procedure when a department head receives an FMLA request is for the department head to forward the request to the Chief of Human Resources.  (Pl's 56.1(a)(3), Dkt. 36, Ex. 1, at A-78.)  At his deposition in April 2009, Chief Waszak testified that he was currently following that procedure, but that the procedure in January 2006 had been to submit FMLA requests to the legal department.  (Waszak's Dep., Defs' Ex. 16, at 18-20.)  Waszak could not recall when the policy was changed.  (*Id.*)

Eight days after she submitted her FMLA request, Plaintiff followed up by calling Waszak's office.  (Pl's 56.1(a)(3), Dkt. 36, Ex. 1, ¶ 21.)  Spina-Fox told her that the request had been received.  (*Id.*)  In an affidavit, Plaintiff stated that she asked Spina-Fox how long the approval process would take, and Spina-Fox said she did not know.  (*Id.*, at A-96-A-97.)  In March 2006, Plaintiff contacted Luis Martinez in Cook County's human resources department.[1]  (Defs' 56.1(a)(3),

---

[1]       In her 56.1(a)(3) Statement, Plaintiff states that she spoke to Spina-Fox on February 17, 2006, and that Spina-Fox told her that the request was "stuck in legal."  (Pl's 56.1(a)(3), Dkt. 36, Ex. 1, ¶ 23.)  That statement is not supported by the citations to the record provided.   The citation is to an affidavit in which Plaintiff states that she spoke to Spina-Fox's *husband*, another District Police Officer, on that day.  (*Id.*, at A-97.)  The affidavit goes on to state that Spina-Fox's husband *later* told Plaintiff that Spina-Fox had told *him* that the request was "stuck in legal."  (*Id.*)  Spina-Fox testified that she never told her husband that Plaintiff's request was "stuck
(continued...)

Dkt. 39, ¶ 42.) Plaintiff testified that Martinez told her he had no record of her form being submitted

to the human resources department and that she should call Waszak or Superintendent Bylina to

find out what had happened to it. (Brunson's Dep., Defs' Ex. 18, at 62-63.)

Plaintiff testified that she did attempt to contact Waszak, but spoke to Spina-Fox instead.

(Brunson's Dep., Defs' Ex. 18, at 62-63.) Spina-Fox does not recall speaking to Plaintiff in late

March but said such a conversation was possible. (Spina-Fox's Dep., Defs' Ex. 17, at 37.)

According to Plaintiff, Spina-Fox told her that the form had not been sent to human resources and

that "it was in legal and that it was still stuck there." (Brunson's Dep., Defs' Ex. 18, at 63-64.)

Spina-Fox testified that she never knew the status of Plaintiff's request so would not have said that

it was stuck in legal. (Spina-Fox's Dep., Defs' Ex. 17, at 37-38.) Plaintiff testified that when she

asked for the contact information of the person who had her form, Spina-Fox said she did not have

that information and reminded Plaintiff that her request to work a second job had been denied

because Plaintiff wanted to work more than 20 hours per week at the second job. (Brunson's Dep.,

Defs' Ex. 18, at 64.) According to Plaintiff, Spina-Fox also reminded her about the probationary

nature of her employment and warned that she could be terminated at any time. (*Id.*) Spina-Fox

testified that she would not have made such a statement because she would not have known about

Plaintiff's probationary status. (Spina-Fox's Dep., Defs' Ex. 17, at 43.) Plaintiff testified that Spina-

Fox ultimately said she would provide the contact information for the person who had the form, but

never did provide that information. (*Id.* at 65.)

After her termination, Plaintiff sued the District, Waszak, and Spina-Fox, claiming that they

had interfered with her exercise of her FMLA rights and had terminated her in retaliation for

---

(...continued)
in legal." (Spina-Fox's Dep., Defs' Ex. 17, at 37.) In any event, the statement attributed to Spina-
Fox's husband is inadmissible hearsay, and the court will not consider it.

exercising those rights. Plaintiff has moved for summary judgment on the interference claim and Defendants have moved for summary judgment on the retaliation claim.

## ANALYSIS

The court will grant summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Because the court is considering cross-motions for summary judgment, it construes "facts and inferences therefrom in favor of the party against whom the motion under consideration was made." *Five Points Rd. Joint Venture v. Johanns*, 542 F.3d 1121, 1124 (7th Cir. 2008).

### A.    Plaintiff's Motion for Summary Judgment—Interference Claim

To succeed on her interference claim under 29 U.S.C. § 2615(a), Plaintiff must show that "(1) she was eligible for FMLA protection; (2) her employer was covered by the FMLA; (3) she was entitled to FMLA leave; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her benefits to which she was entitled." *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). Plaintiff argues that undisputed evidence establishes each element. Defendants dispute only the third and fifth elements, arguing that Plaintiff was not entitled to FMLA leave because she did not have a "serious health condition." Defendants also raise a statute-of-limitations defense and argue that the individual Defendants are protected by qualified immunity.

### 1.    Statute of Limitations

Defendants argue, first, that Plaintiff's claim is barred by the statute of limitations. (Defs' Memo in Opposition, Dkt. 44, at 3-5; Defs' Memo in Support, Dkt. 38, at 9-10.) Most FMLA claims, Plaintiff's included, are governed by a two-year statute of limitations. 29 U.S.C. § 2617(c)(1). Plaintiff was terminated on April 18, 2006 and her complaint was received by the Clerk on April 17, 2008. Because Plaintiff filed a petition for leave to proceed *in forma pauperis* at the same time she

filed her complaint, the complaint was not entered into the court's docket until May 29, 2008 when

the IFP petition was granted.  If the complaint is considered filed on that later date, as Defendants'

argue it should be, then it was untimely.  As explained below, however, Defendants' objection must

be overruled.

Local Rule 3.3(d) governs the date of filing for a complaint accompanied by an IFP petition.

Because the court granted the petition and because the complaint was one that "must be filed

within a time limit," it is deemed to have been filed on April 17, 2008, the date that it was received

by the clerk, thereby making it timely.  N.D. ILL. L.R. 3.3(d).  Defendants argue that "time limit" in

Local Rule 3.3(d) does not refer to a congressionally mandated statute of limitations,[2] but they do

not suggest what else it could refer to. (Defs' Reply Memo in Support, Dkt. 48, at 7-8.)  Defendants'

suggestion that the court treat a suit as filed only after a judicial decision on the IFP motion, "would

make judicial delay fatal to some actions," an unacceptable result.  *Williams-Guice v. Board of

Education of Chicago*, 45 F.3d 161, 162 (7th Cir. 1995).  That is why the local rules treat the

complaint as filed when received.  The court notes that the Federal Rules themselves require this

treatment.  *Robinson v. Doe*, 272 F.3d 921, 922-23 (7th Cir. 2001).

### 2.    Plaintiff's Entitlement to FMLA Leave

Plaintiff is entitled to FMLA leave if she suffered from a "serious health condition" that made

her "unable to perform the functions" of her position.  29 U.S.C. § 2612(a)(1)(D).  FMLA defines

"serious health condition" as "an illness, injury, impairment, or physical or mental condition that

involves—(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B)

continuing treatment by a health care provider."  *Id.* § 2611(11).  Defendants argue that there is

insufficient evidence to show that Plaintiff suffered from a "serious health condition."  (Defs' Memo

---

[2]    As part of their argument, Defendants insist that meeting the FMLA's statute of limitations is a jurisdictional requirement.  Like other run-of-the-mill limitations periods, though, it is not.  *See In re Ross-Tousey*, 549 F.3d 1148, 1155-56 (7th Cir. 2008) (citing *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133 (2008)).

in Opposition, Dkt. 44, at 6-7.)  Plaintiff argues that by failing to respond to her FMLA leave request, Defendants have waived the right to challenge whether her asthma qualified as a "serious health condition."  (Pl's Memo in Support, Dkt. 36, at 7-8.)

The FMLA creates a system that allows employers to challenge an employee's claim that she suffers from a "serious health condition."  Under 29 U.S.C. § 2613(a), an employer may require that an FMLA request be supported by a certification from a health care provider.  If the employer "has reason to doubt the validity of the certification," the employer can require, at its expense, the opinion of a second health care provider that it designates or approves.  *Id.* § 2613(c).  If the two certifications conflict, the employer can require the employee to obtain a third opinion from a health care provider jointly chosen by the employer and the employee, and that opinion will be final.  *Id.* § 2613(d).  Two district courts have held that § 2613 outlines the exclusive procedure for challenging an employee's medical certification, so that an employer who fails to challenge a sufficient certification when it is submitted is estopped from making a similar challenge in subsequent litigation.  *Smith v. Univ. of Chicago Hospitals*, No. 02 C 0221, 2003 WL 22757754, at *8-*9 (N.D. Ill. Nov. 20, 2003) (Lefkow, J.); *Sims v. Alameda-Contra Costa Transit District*, 2 F. Supp. 2d 1253, 1262-63 (N.D. Cal. 1998).  Three circuit courts have disagreed, holding that the procedures in § 2613 are not mandatory.  *Novak v. MetroHealth Medical Center,* 503 F.3d 572, 579-80 (6th Cir. 2007); *Rhoads v. F.D.I.C.*, 257 F.3d 373, 385-86 (4th Cir. 2001); *Stekloff v. St. John's Mercy Health System*, 218 F.3d 858, 860 (8th Cir. 2000).

When confronted with the question, the Seventh Circuit held that it was unnecessary to determine whether § 2613 creates a mandatory procedure because there was no remedy under the FMLA for violating that procedure unless the violation "interfered with, restrained or denied [the employee's] exercise of his rights under the FMLA."  *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 911 (7th Cir. 2008).  In other words, even where an employer fails to use § 2613 to challenge an employee's certification, the employee still has the burden of showing that she is entitled to FMLA

rights.  *Id.* at 908 (collecting cases).  That ultimate holding is not necessarily inconsistent with the rulings in *Smith* and *Sims* that an employer who failed to follow the § 2613 procedure was not entitled to discovery of the employee's medical records in a later civil action.  *Smith,* 2003 WL 22757754, at *9; *Sims*, 2 F. Supp. 2d at 1263.  Importantly, those cases did not allow employees to win their claims by relying on the act of filing the FMLA request only; the courts required that the certifications accompanying the requests be sufficient to establish serious health conditions.  *Smith,* 2003 WL 22757754, at *9; *Sims*, 2 F. Supp. 2d at 1263; *see also Plesha v. U.S. Steel Corp.*, No. 05 C 201, 2007 WL 465447, at *6 (N.D. Ind. Feb. 7, 2007); *Dowell v. Indiana Heart Physicians, Inc.*, No. 03 C 1410, 2004 WL 3059788, at *5 (S.D. Ind. Dec. 22, 2004).

Defendants here argue that Plaintiff has not met this burden because her certification was insufficient.[3]  They fault the certification, (Defs' Ex. 5), for failing to provide factual information relative to the seriousness of Plaintiff's condition, for not explaining why hospitalization would be required, and for being completed by a physician without personal knowledge of Plaintiff's condition. (Defs' Memo in Opposition, Dkt. 44, at 6-7.)  The third objection is easily rebutted: Defendants point to no evidence suggesting that Dr. Cressa Perish, who signed the certification, did not treat Plaintiff. They focus only on Dr. Perish's indication that in addition to the regimen of treatment she had personally prescribed, she had also referred Plaintiff to an allergist.  Defendants do not explain how the referral subtracts anything from the doctor's personal diagnosis.  Defendants' other objections to the certification are also rejected: stating that Plaintiff will need to miss 1 to 5 days of work every 3 to 6 months sufficiently explains the seriousness of Plaintiff's condition, and stating that she suffers from asthma sufficiently explains why hospitalization will be required.  The requirements for

---

[3]     It is worth noting that the certification form appears to have been designed by the District itself.  If the information it requests truly were insufficient, it could be unfair to allow the District to benefit from its own errors in designing the form.  *Cf. Townsend-Taylor v. Ameritech Services, Inc.*, 523 F.3d 815, 817 (7th Cir. 2008) (providing an employee with misleading instructions that cause him to miss a deadline can constitute interference prohibited by FMLA).

a sufficient certification, 29 U.S.C. § 2613(b), are not onerous, and Plaintiff's certification easily satisfies them. *Kauffman v. Federal Express Corp.*, 426 F.3d 880, 886 (7th Cir. 2005). As in *Kauffman*, Plaintiff's certification "provides the date the serious health condition began, its probable duration, relevant medical facts, and a statement that the employee is unable to work." *Id.* Defendants' argument that this information is inadequate is further undermined by their own failure to seek any additional information upon receipt of the form.

Finally, as Plaintiff explains, Defendants have not presented any evidence that would call into question the diagnosis reflected in the certification or her own testimony about her asthma. (Pl's Reply Memo in Support, Dkt. 47, at 9-10.) Based on that evidence, Plaintiff has established that she suffered from a "serious health condition." Defendants have not contested Plaintiff's assertion that she has satisfied the other prongs required to establish an FMLA interference claim, so summary judgment is granted to Plaintiff against the District on that claim. Plaintiff's claim against the individual Defendants is addressed in more detail below.

### 3. Qualified Immunity

The individual Defendants argue that they are entitled to qualified immunity because it is unsettled whether individual public employees are subject to FMLA liability and because they acted reasonably. (Defs' Memo in Opposition, Dkt. 44, at 9-12; Defs' Memo in Support, Dkt. 38, at 10-12.) In a footnote on page 7 of Plaintiff's Response Memorandum in Opposition to Defendants' Motion for Summary Judgment, Dkt. 42, she informs the court that she "hereby withdraws her claims against Defendant Spina-Fox." The court construes this statement as a concession that summary judgment should be granted in Defendant Spina-Fox's favor on all claims. Accordingly, the discussion that follows concerns Defendant Waszak only.

The Seventh Circuit has yet to rule on whether individuals employed by public agencies are liable under the FMLA. The Fifth and Eighth Circuit have held that public employees are subject to individual liability under the FMLA, but the Sixth and Eleventh Circuits have both ruled to the

contrary.  *Compare Modica v. Taylor*, 465 F.3d 174, 186 (5th Cir. 2006); *Darby v. Bratch*, 287 F.3d

673, 681 (8th Cir. 2002) *with Wascura v. Carver*, 169 F.3d 683, 685-87 (11th Cir. 1999); *Mitchell v.*

*Chapman*, 343 F.3d 811, 829-30 (6th Cir. 2003).  Under the FMLA,

> The term "employer"--
>
> (I) means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year;
>
> (ii) includes--
>
>> (I) any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer; and
>>
>> (II) any successor in interest of an employer;
>
> (iii) includes any "public agency", as defined in section 203(x) of this title; and
>
> (iv) includes the Government Accountability Office and the Library of Congress.

29 U.S.C. § 2611(4)(A).  An individual is liable under the FMLA, then, if she is a "person who acts,

directly or indirectly, in the interest of an employer to any of the employees of such employer."  *Id.*

§ 2611(4)(A)(ii)(I).  And because a public agency is an "employer," *id.* § 2611(4)(A)(iii), an individual

employed by a public agency can be liable.  Under that clear reading of the statute, individual

employees of public agencies are subject to liability.  *Modica*, 465 F.3d at 184; *Darby*, 287 F.3d at

681.

In support of their contrary reading of the FMLA, Defendants rely on the holdings of the Sixth

and Eleventh Circuits.  The reasoning adopted by the Eleventh Circuit in *Wascura*, 169 F.3d at 683,

has been explicitly disapproved by the Seventh Circuit.  *Luder v. Endicott*, 253 F.3d 1020,

1022 (7th Cir. 2001).[4]  The Sixth Circuit's holding on the issue is based on a reading of § 2611(4)(A) in which clause (ii) does not apply to clause (iii), so one acting in the interests of a public agency is not an employer under the FMLA.  *Mitchell*, 343 F.3d at 830-31.  The court is not convinced that those clauses must be read separately; cross-references are a familiar practice in statutory drafting. Nor is the court convinced that the Sixth Circuit's reading is necessary to avoid rendering "other provisions of the statute superfluous" or to avoid creating "several oddities."  *Id.* at 830.  As Magistrate Judge Schenkier has explained, "that the statute expressly defines private and public employers differently with respect to the number of persons they employ and their involvement in commerce does not render superfluous either definition."  *Rasic v. City of Northlake*, 563 F. Supp. 2d 885, 891 (N.D. Ill. 2008).  Moreover, even though it is unlikely that the provision creating liability for a successor in interest of an employer, clause (ii)(II), will ever be applied to a public agency or to the Library of Congress, that does not make the possibility absurd.  *Id.*  The court respectfully disagrees with the Sixth Circuit's reading.

Defendants urge that the circuit split on the issue demonstrates that there is uncertainty over whether individual government employees are liable under FMLA.  Accordingly, they contend, Defendant Waszak is entitled to qualified immunity.  (Defs' Memo in Opposition, Dkt. 44, at 10-11; Defs' Memo in Support, Dkt. 38, at 11-12.)  This argument reflects a misunderstanding of the doctrine of qualified immunity.  That doctrine shields government officials from liability for damages "insofar as their *conduct* does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (emphasis added).  An argument about whether some class of defendants is subject to liability under a statute has no connection to rules of conduct imposed by that statute.  Whether or not

---

[4]        *Luder's* ultimate holding, that the Eleventh Amendment bars some suits against individual state employees under the Fair Labor Standards Act, does not prevent similar suits under the FMLA because no such Eleventh Amendment bar applies to suits under the FMLA.  *Nevada Dep't of Human Resources v. Hibbs*, 538 U.S. 721 (2003).

Defendant Waszak can be sued under the FMLA, the rules governing his *conduct* are clear. *Gray v. Baker*, 399 F.3d 1241, 1246 (10th Cir. 2005); *Darby*, 287 F.3d at 681. The Fifth Circuit held to the contrary in *Modica*, 465 F.3d at 187-88, but, again, for the reasons articulated by Magistrate Judge Schenkier, the court respectfully disagrees. *Rasic*, 563 F. Supp. 2d at 893.

Defendants' other qualified-immunity argument is that a reasonable official in Waszak's position would not have known that terminating Plaintiff violated the FMLA. (Defs' Memo in Opposition, Dkt. 44, at 11.) The court is inclined to follow the Eighth Circuit's ruling that the defense of qualified immunity does not apply to FMLA claims at all because the FMLA creates "clearly established statutory rights." *Darby*, 287 F.3d at 681. Even assuming that qualified immunity is available, though, the defense does not help Waszak because his argument on the issue is limited to Plaintiff's termination. Plaintiff's interference claim is aimed at the denial of FMLA benefits to which she was entitled, not her termination. Defendants do not suggest, nor could they, that it was not clearly established that an employee who files an adequate FMLA request is entitled to leave.

For all these reasons, Plaintiff's motion for partial summary judgment on her interference claim is granted as to Defendants Waszak and the District. Summary judgment is granted to Spina-Fox on this claim.

**B.      Defendants' Motion for Summary Judgment—Retaliation Claim**

In addition to allowing employees to take leave under certain conditions, the FMLA also prohibits employers from discriminating or retaliating against employees who exercise their FMLA rights. 29 U.S.C. § 2615(a)(2), 2615(b). Like retaliation claims under other employment discrimination statutes, an FMLA retaliation claim can be proven under the direct or indirect methods of proof. *Daugherty v. Wabash Center, Inc.*, 577 F.3d 747, 751 (7th Cir. 2009). Plaintiff argues under the direct method only. (Pl's Memo in Opposition, Dkt. 42, at 6 n.4.) To succeed under this method, she must "present evidence of a statutorily protected activity, a materially

adverse action taken by the employer, and a causal connection between the two."[5] *Daugherty*, 577 F.3d at 751.

Undisputed evidence satisfies the first two prongs of the test for showing retaliation under the direct method. Plaintiff's submission of her request was a statutorily protected activity and her termination was a materially adverse action. The only question, then, is whether there is sufficient evidence from which a jury could find a causal connection between Plaintiff's request and her termination. Defendants argue that the evidence is insufficient on this score because it does not show animus on the part of any decisionmaker, (Defs' Memo in Support, Dkt. 38, at 3), but such evidence is not required. A plaintiff may prove the connection by circumstantial evidence, which "may include suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group." *Long*, 585 F.3d at 349-50. Plaintiff seeks to rely on such circumstantial evidence, but, for the reasons explained here, the court concludes it is insufficient to create a dispute of fact concerning her retaliation claim.

The first piece of circumstantial evidence on which Plaintiff relies is that despite her record of poor attendance before she requested FMLA leave, she was only warned about the problem; she was not disciplined until after she made her request. (Pl's Memo in Opposition, Dkt. 42, at 4.) In some circumstances, courts will infer retaliation where an employee routinely violates an employer's policy but is fired for doing so only after some protected activity. *E.g., Lamer v. Metaldyne Co. LLC,* 240 Fed. App'x 22, 32-33 (6th Cir. 2007) (unpublished). This is not such a case, however; the

---

[5]     Defendants argue for a different standard. Relying on the standard for proving a Title VII claim of racial discrimination by the direct method, they contend that to make a direct case of retaliation, Plaintiff must "'directly show that [FMLA] discrimination motivated the employment decision.'" (Defs' Memo in Support, Dkt. 38, at 3) (*quoting Nichols v. Southern Illinois University-Edwardsville*, 510 F.3d. 772, 783 (7th Cir. 2007). That is not the law for retaliation claims under the FMLA. *Long v. Teachers' Retirement System of Illinois*, 585 F.3d 344, 349-50 (7th Cir. 2009); *Daugherty*, 577 F.3d at 571; *Cole v. Illinois*, 562 F.3d 812, 815 (7th Cir. 2009). And, as the case on which Defendants attempt to rely itself makes clear, that standard does not apply to retaliation claims under Title VII either. *Nichols*, 510 F.3d at 784-85.

timing of Plaintiff's termination is hardly suspicious. First, it came three months after she filed her FMLA request. *Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 549 (7th Cir. 2008) (temporal proximity, on its own, is insufficient to show retaliation unless it is limited to "days, or at most, weeks"). More important, though, Plaintiff was terminated just before the probationary period ended. There is nothing suspicious about that. *Cf. Burks v. Wisconsin Dep't of Transportation*, 464 F.3d 744, 758 n.17 (7th Cir. 2006) (distinguishing case where probationary employee was terminated based on bad reviews that began after complaint of discrimination from case where bad reviews following discrimination complaint were preceded by five years without complaint about employee's performance).

Plaintiff next points to her difficulties in getting any information about her FMLA request after she submitted it. (Pl's Memo in Opposition, Dkt. 42, at 4.) It is undisputed that for three months before she was terminated, Plaintiff received no response to her request. (Pl's 56.1(a)(3), Dkt. 36, Ex. 1, ¶ 35.) As discussed above, Defendants' failure to act on Plaintiff's FMLA request supports her interference claim. It would also seem to violate Department of Labor Regulations requiring a prompt response to an employee's FMLA request. Under 29 C.F.R. § 825.208(b)(1), which was in force in 2006, an employer was required to respond "within two business days absent extenuating circumstances." (Today, the employer has five business days. 29 C.F.R. § 825.300(b)(1)). The District's failure to act on Plaintiff's request is unexplained and disappointing. Nevertheless, Plaintiff has failed to draw any connection between the failure to act on her request and her termination.

In the typical FMLA retaliation case where an employee is terminated for excessive absenteeism, the employee argues that if her FMLA request had been granted, the absences could not have been counted against her. *Lewis v. School Dist. #70*, 523 F.3d 730 (7th Cir. 2008); *Kauffman v. Federal Express Corp.* 426 F.3d 880, 885 (7th Cir. 2005). Notably, Plaintiff here has not raised that argument. Defendants evidently anticipated that she would, as they addressed the

matter in their memorandum in opposition to Plaintiff's motion for summary judgment. (Def's Memo in Opposition, Dkt. 44, at 7-9.) In response, Plaintiff explicitly disclaimed any contention that the District's failure to grant her request for FMLA leave was the reason that her absences triggered discharge. (Pl's Reply Memo in Support, Dkt. 47, at 10-11.) Based on the court's examination of the record, it appears that only a handful of the 36.5 days on which Plaintiff was absent are attributable to asthma. Instead, the record suggests that on several occasions, Plaintiff used sick days to extend or substitute for other leave. For example, she was reprimanded in August 2005 for elongating breaks from work by combining sick days with regularly scheduled days off. (Defs' 56.1(a)(3), Dkt. 39, ¶¶ 13-14.) And Waszak testified that after a request by Plaintiff to take days off was denied in April 2006, she nevertheless took those days off by using sick time. (Waszak's Dep., Defs' Ex. 16, at 51.) Thus, Plaintiff has not demonstrated (and, indeed, has not argued) that Defendants' failure to act on Plaintiff's FMLA request resulted in her ultimate termination.

Somewhat connected to the District's failure to formally respond to Plaintiff's request is the oral response Plaintiff says she received when she inquired about the request. Plaintiff testified that when she contacted Waszak's office, Spina-Fox told her that the request was "stuck in legal," and that when pressed for more information, Spina-Fox warned Plaintiff that, as a probationary employee, she could be terminated at any time. (Brunson's Dep., Defs' Ex. 18, at 62-64.) That testimony is disputed, (Spina-Fox's Dep., Defs' Ex. 17, at 37-38, 43), but the court must credit it for the purpose of deciding Defendants' motion for summary judgment.

Defendants argue that even crediting Plaintiff's testimony about Spina-Fox's statements, those statements should not be considered because they are not attributable to Waszak, and because Spina-Fox had no role in the decision to terminate Plaintiff. (Defs' Reply Memo in Support, Dkt. 48, at 4.) In assessing the weight of Spina-Fox's alleged statements, the court notes, first, that the statement that Plaintiff's request was "stuck in legal" appears to have been true; whether the court can infer retaliation as a result is discussed below. The other statement at issue—the

reference to Plaintiff's probationary status in response to a question about her FMLA request—is troubling, but does not rise above the category of "stray remarks" insufficient to defeat summary judgment. *Lucas v. PyraMax Bank, FSB*, 539 F.3d 661, 667 (7th Cir. 2008). In *Lucas*, the plaintiff was told by her boss that news about medical problems like hers was the "kiss of death" for most employees, but the plaintiff was not terminated until more than one year later. As in *Lucas*, the veiled threat that Plaintiff attributes to Spina-Fox was not made "contemporaneously or in connection with" the termination. *Id.* Spina-Fox's purported comment may have been somewhat closer in time to the termination than the comment in *Lucas,* but Spina-Fox herself was not connected to the termination; she was not a decisionmaker and there is no evidence that she exerted any influence over the ultimate decision to terminate Plaintiff. *Long*, 585 F.3d at 351. To use a buzzword of the moment, even assuming animus on the part of Spina-Fox, there is no evidence that the actual decisionmaker acted as Spina-Fox's "cat's paw." *Staub v. Proctor Hospital*, 560 F.3d 647 (7th Cir. 2009).

The last piece of evidence on which Plaintiff seeks to rely in making her case of retaliation is the procedure that Defendant Waszak followed in processing the FMLA request. (Pl's Memo in Opposition, Dkt. 42, at 4-5.) In support of her argument that Waszak failed to follow the proper procedure, Plaintiff seeks to rely on the document setting forth the District's procedure for processing FMLA requests that was produced in discovery. (Pl's 56.1(a)(3), Dkt. 36, Ex. 1, at A-78.) That document, however, is undated, and the only evidence regarding it is Waszak's testimony that the procedure was not in place as of January 2006 when Plaintiff submitted her FMLA request. (Waszak's Dep., Defs' Ex. 16, at 18-20.) Waszak testified that he followed the procedure then in effect by submitting Plaintiff's request to the legal department, (*id.*), and no evidence contradicts that testimony. In fact, Plaintiff's claim that Spina-Fox told her the FMLA request was "stuck in legal" confirms it. The court has already ruled that the procedure followed with respect to Plaintiff's claim interfered with Plaintiff's FMLA rights. Plaintiff would have the court go further and infer from

17

Waszak's re-submission and re-re-submission of her request to different lawyers that he was searching for "legal sanction for his desire to terminate" Plaintiff, (Pl's Memo in Opposition, Dkt. 42, at 5), but such an inference rests on pure speculation. At summary judgment, the court draws inferences in favor of the nonmoving party, but only inferences reasonably drawn from the evidence.

Thus, Plaintiff's evidence—when considered singly or in combination—is not sufficient to show the required connection between her FMLA request and her termination. Defendants' motion for partial summary judgment on this claim is granted.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment on the Interference Claim [35] is granted against Defendants Waszak and the District. Defendants' Motion for Partial Summary Judgment on the Retaliation Claim [37] is granted. Summary Judgment is granted to Defendant Spina-Fox on both claims. Defendants' Motion to Strike [49] is denied.

The parties are encouraged to attempt to settle the remaining differences. If they are unsuccessful, the court will expect Plaintiff to submit a memorandum within 28 days setting forth evidence of her damages. The court notes that, under 29 U.S.C. § 2617, relief for an FMLA violation is available only if the employee was prejudiced by the violation. *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002).

ENTER:

Dated: March 3, 2010

_____
REBECCA R. PALLMEYER
United States District Judge